Argued and submitted January 6, affirmed March 28, 2012

In the Matter of A. A. W.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

B. W.,
*Appellant.*

Union County Circuit Court
4999JD;
Petition Number 4999JD02;
A149347

275 P3d 989

Shannon L. Flowers, Deputy Public Defender, argued the cause for appellant. With her on the brief was Peter Gartlan, Chief Defender, Appellate Division, Office of Public Defense Services.

Rebecca M. Johansen, Assistant Attorney General, argued the cause for respondent. With her on the brief were John R. Kroger, Attorney General, and Anna M. Joyce, Solicitor General.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Nakamoto, Judge.

SCHUMAN, P. J.

## SCHUMAN, P. J.

In this dependency case, father appeals from a judgment of the juvenile court ordering that he undergo a psychological evaluation. We review the juvenile court's legal conclusions for errors of law and its findings for any evidence, *Dept. of Human Services v. C. Z.*, 236 Or App 436, 442, 236 P3d 791 (2010), and affirm.

The underlying facts are largely procedural and undisputed. The child was born in late January 2010, and has been within the protective custody of the juvenile department since July 14, 2010. Father has been incarcerated since before the child's birth and has had no contact with her. In February 2011, father stipulated to the juvenile court's jurisdiction of the child based on allegations that (1) he did not have a parental relationship with the child, had not presented himself as a parenting resource, and needed the assistance of a child caring agency to establish a meaningful relationship with the child; and (2) he was unavailable to parent due to incarceration. DHS originally also alleged that father presented a risk of harm to the child based on his criminal history ("burglary, robbery, and assault"), but that allegation was dismissed by stipulation of both parties.

It is undisputed that father's incarceration is based on convictions for assault and riot. Father is scheduled to be released from prison on July 14, 2012. At a permanency hearing on July 11, 2011, the state requested that the court continue the permanency plan of reunification. The state also requested that the juvenile court order father to participate in a psychological evaluation to assist the department in determining what services to provide father upon his release from prison. The department explained,

> "We would also request that [father] undergo a psychological evaluation to get some professional input as to what types of services [father] would need upon his release, and the approximate time frames that [father] will need to successfully engage in those services before we could be sure he would be a safe person to be around the child, whether that be visiting or placement resource."

Father objected, contending that a psychological evaluation is not rationally related to the bases for jurisdiction.

> "Your Honor, excuse me, but I think I really should add something on behalf of [father] because * * * [the child's counsel] reminded me * * * about the psychological evaluation request as to [mother]. That has shown up in the letter of expectation for [father] as well. I don't see that there's a basis for that and * * * without some indication that it's, there's jurisdiction based on a mental health issue, I don't believe it would be proper to require that and I think it's inappropriate for DHS to be asking for it."

The state replied that, because father was in prison for violent crimes, it was appropriate to conduct a psychological evaluation to determine whether father was a safe visitation or placement resource for the child. The state disagreed with father's assertion that, in order to require a mental health evaluation, the basis for jurisdiction would have to have included a mental health issue. Father countered that ordering a psychological evaluation would be error without "the state establishing a rational relationship between that request and [father's] circumstances."

The juvenile court decided to order the psychological evaluation, based on the fact that the record reflected that father's incarceration was for riot and assault—two offenses involving violence.[1] The court found that DHS needed a psychological evaluation to develop an appropriate case plan to address the safety risk presented by father's circumstances. The court explained, "it's only reasonable that DHS would have some information about the gentleman and * * * his mental health status, regarding whether there's going to be unsupervised visits or anything like that. * * * [T]hey'd be remiss in not requesting it." The court concluded that there was a rational basis for requiring the evaluation. The court noted further that a report in the record indicated that father had been disciplined while incarcerated due to negative behaviors, and found that that was another reason to require the psychological evaluation.

---

[1] Indeed, a DHS protective custody report stated that father has an extensive criminal conviction history, dating back to 2002, that includes four assault convictions, as well as convictions for theft, burglary, disorderly conduct, harassment, criminal mischief and riot.

Father appeals, contending that, after taking jurisdiction of the child, the juvenile court was authorized under ORS 419B.337(2)[2] and ORS 419B.343[3] to make *only* those orders for services that bear a rational relationship to the jurisdictional findings that brought the child into the court's jurisdiction. Father relies on *State ex rel Juv. Dept. v. G. L.*, 220 Or App 216, 223, 185 P3d 483, *rev den*, 345 Or 158 (2008), where this court held that ORS 419B.343 requires a rational connection between the service to be provided and the basis for jurisdiction. In father's view, the requirement that father undergo a psychological evaluation does not bear any relationship, let alone a rational relationship, to the factual bases for jurisdiction. Father focuses on the fact that the stipulated bases for jurisdiction were (1) father's lack of a relationship with the child and (2) his unavailability due to incarceration. He contends that a psychological evaluation is not related to either one of those factual bases for jurisdiction, because there is no evidence that father's lack of relationship with the child, incarceration, or unavailability are circumstances that would pose a safety risk to the child when he is released, and having a psychological evaluation will not assist father in establishing a relationship with the child. Father contends, further, that, to the extent that the juvenile court concluded that a psychological evaluation was rationally related to the underlying conduct that had resulted in father's incarceration, it was incorrect, because the state did not present any evidence in support of its argument that father had been convicted of assault and riot.

---

[2] ORS 419B.337(2) provides:

"The court may specify the particular type of care, supervision or services to be provided by the Department of Human Services to wards placed in the department's custody and to the parents or guardians of the wards, but the actual planning and provision of such care, supervision or services is the responsibility of the department. The department may place the ward in a child care center authorized to accept the ward."

[3] ORS 419B.343 provides, in part:

"(1) To ensure effective planning for wards, the Department of Human Services shall take into consideration recommendations and information provided by the committing court before placement in any facility. The department shall ensure that the case planning in any case:

"(a) For the reunification of the family bears a rational relationship to the jurisdictional findings that brought the ward within the court's jurisdiction under ORS 419B.100."

The state responds that the bases for father's incarceration are in the record and are also a matter of public record. The state is correct. The state further contends that the ordered psychological evaluation is rationally related to the reason for father's unavailability—his conviction and incarceration for crimes involving violence.

We agree with the state. Father is correct that the ordered services must bear a rational relationship to the bases for the finding of jurisdiction; however, a "rational relationship" is a minimal threshold of justification. It is true that the bare allegations that formed the bases for jurisdiction do not disclose in and of themselves any reason why father might pose a risk to the child; but the court was not required to turn a blind eye to the record before it. That record discloses that father was incarcerated—a stipulated allegation—as well as the cause of that incarceration. The court found that the reasons for father's lack of relationship with the child, unavailability, and imprisonment were his convictions for assault and riot. The court further found that father posed a risk to the child. The court's findings are supported by the record and we are bound by them. *C. Z.*, 236 Or App at 442. DHS put on evidence that a psychological evaluation would aid DHS in assessing father's safety risk and determining what services DHS should provide. The court concluded that "a psychological evaluation would be rationally related in this case to determine whether he's going to be safe around the child."

Further, even if the court's expressed reason for ordering a psychological evaluation was somehow inadequately related to the stipulated allegations—which, we repeat, it was not—the order was correct for another, equally valid, reason: Due to the fact that father has never met the child and has no relationship with her, he will benefit from services to help him establish a relationship with her, and the psychological evaluation will help DHS decide what services are best suited to that need.

We conclude that the juvenile court did not err in concluding that a psychological evaluation to determine the appropriate services necessary to ensure that father can establish a safe relationship with the child is rationally

related to the bases for jurisdiction, viewed in the context of the record as a whole.

Affirmed.